# Exhibit 39

05 Dec 2022

**CL-2018-000297, CL-2018-000404,  CL-2018-000590, CL-2019-000487 & CL-2020-000369 (CONSOLIDATED)**

**IN THE HIGH COURT OF JUSTICE**
**BUSINESS AND PROPERTY COURT OF ENGLAND AND WALES**
**KING'S BENCH DIVISION**
**COMMERCIAL COURT**

CL-2018-000297

**BEFORE THE HONOURABLE MR JUSTICE ANDREW BAKER**
2ⁿᵈ December 2022
In Public

**BETWEEN:**
          **SKATTEFORVALTNINGEN (the Danish Customs and Tax Administration)**
                                                                                    Claimant

          **-and-**

          **SOLO CAPITAL PARTNERS LLP (in special administration) & OTHERS**
                                                                                    Defendants

---

**CASE MANAGEMENT ORDER**
**DIRECTIONS FOR MAIN TRIAL**

---

**UPON** there being five sets of claims with numbers CL-2018-000297 (the "**First Claim**"), CL-2018-000404 (the "**Second Claim**"), CL-2018-000590 (the "**Third Claim**"), CL-2019-000487 (the "**Fourth Claim**"), and CL-2020-000369 (the "**Fifth Claim**") which were consolidated by the Orders of Mr Justice Jacobs dated 27 June 2018, Mrs Justice Cockerill dated 12 October 2018, Mr Justice Andrew Baker dated 11 May 2020 and 25 January 2021 (the "**Consolidated Proceedings**") involving numerous parties

**AND UPON** the Order of Mr Justice Andrew Baker dated 16 July 2020 (the "**July 2020 CMC Order**"), which provided inter alia for a preliminary issue Validity Trial (the "**Validity Trial**")

**AND UPON** the Order of Mr Justice Andrew Baker dated 11 May 2022 (the "**May 2022 CMC Order**") providing inter alia for (i) the Validity Trial to be listed for 4 weeks from 16 January 2023; (ii) a trial in the Consolidated Proceedings to be listed to commence on 15 April 2024 (the "**Main Trial**"); (iii) a case management conference to be listed for 21 November 2022 (the "**November 2022 CMC**") to consider whether, and if so what, directions should be made for the trial in the

1

Consolidated Proceedings and (iv) a pre-trial review in relation to the Validity Trial to be listed for 28 November 2022, reserved to Mr Justice Andrew Baker (the "**PTR**")

**AND UPON** a hearing in the Supreme Court on the Revenue Rule being listed for 5 and 6 July 2023, permission to appeal having been granted on 28 October 2022

**AND UPON** the Claimant by letter dated 4 November 2022 proposing for the parties' consideration the adjournment of the Validity Trial and Main Trial (the "**Proposed Adjournment**")

**AND UPON** Mr Justice Foxton directing by emails on 10 and 17 November 2022 that the Proposed Adjournment and Main Trial directions should be a matter for Mr Justice Andrew Baker at the PTR

**AND UPON** Mr Justice Foxton at a CMC on 21 November 2022 (the "**November 2022 CMC**") *inter alia* granting permission for SKAT to make amendments to its statement of case, directing that the represented Defendants file responsive amendments to their statements of case by 31 March 2023, that the unrepresented Defendants do so by 28 April 2023 and that SKAT file amended Replies by 26 May 2023, and directing a timetable for the updating of the List of Issues

**AND UPON** the Court hearing from Counsel for the Claimant and Counsel for the Sanjay Shah Defendants and Counsel for the DWF Defendants

## IT IS ORDERED THAT:

### Case Management Conferences

1.   By 4pm on 2 December 2022, the Parties shall attend on the Commercial Court Listing Office to fix the dates for:

    a)   a further Case Management Conference after the Validity Trial with a time estimate of 3 days including 1 day pre-reading, to be fixed for the earliest available date on or after 6 June 2023, and reserved to Mr Justice Andrew Baker (to consider inter alia the structure

of the Main Trial); and

b)    the First and Second Pre-Trial Reviews referred to in paragraph 33 below.

2.    The listing of the Case Management Conference provided for in paragraph 1 above may be varied by further Order of the Court following the conclusion of the Validity Trial.

**Clean Statements of Case**

3.    When filing and serving any further amended statements of case (including those permitted at paragraphs 5-9 of the Order of Mr Justice Foxton made at the November 2022 CMC and at paragraph 2 of the Validity Trial PTR Order), the parties shall file and serve clean versions of those statements of case showing the amended text only, in addition to struck-through and colour-coded versions showing original and amended text.

**Witness statements**

4.    By 4pm on 22 September 2023, all parties shall exchange signed witness statements of fact, and hearsay notices where required by rule 33.2. Such witness evidence shall include the primary witness evidence on which each of the parties intends to rely at trial. For the avoidance of doubt, the parties may not use the permission for supplemental witness evidence (at paragraph 5 below) to delay service of their primary witness evidence pending sight of the witness statements of other parties.

5.    By 4pm on 23 October 2023, the parties shall serve any signed supplemental witness statements of fact (and hearsay notices where required by rule 33.2) in reply to the evidence given pursuant to paragraph 4 above and paragraph 18 below.

6.    Unless otherwise ordered, witness statements are to stand as evidence in chief of the witness at trial.

7.    Any notices to prove the authenticity of documents pursuant to rule 32.19, shall be filed and served by no later than 4pm on 23 October 2023.

3

**Expert evidence**

8.    The areas of expertise, which are set out in paragraph 9 below, and the issues for expert evidence, which are set out in Appendix A, shall be reviewed and refined at the Case Management Conference after the Validity Trial to be fixed in accordance with paragraph 1 above.  Any Defendant seeking to vary paragraph 9 below or Appendix A under this part shall notify the other parties in writing as soon as possible and in any event by no later than 21 days before the date of the Post Validity Trial CMC provided for by paragraph 1 above.

9.    Subject to paragraph 16 below, there shall be permission to adduce expert evidence  in each of the following fields of expertise in relation to the issues set out in Appendix A to this Order:

   a)    Danish law of tort/delict, proprietary claims, unjust enrichment and limitation;

   b)    Danish public law including in relation to SKAT's standing to sue;

   c)    Law of the United Arab Emirates as regards unjust enrichment;

   d)    Accountancy in relation to the trading underlying the WHT Applications and the WHT refunds paid by SKAT;

   e)    Accountancy in relation to the flow of funds to the Defendants.

10.   The Claimant shall have permission to adduce an expert report from one expert in respect of each of the fields of expertise set out in paragraph 9 above.

11.   Subject to paragraph 16 below, the Sanjay Shah Defendants shall have permission to adduce an expert report in the expert discipline at paragraph 9.a) above (Danish civil law) in relation to the issues of set out in paragraphs 1, 3-12 of Appendix A hereto.

12.   Subject to paragraph 16 below, either the Sanjay Shah Defendants or the DWF Defendants (or the Sanjay Shah and DWF Defendants jointly) shall have permission to adduce an expert report in the expert discipline at paragraph 9.b) above (Danish public law) in relation to the issues set out in paragraphs 13-16 of Appendix A hereto.  Any dispute between the Sanjay Shah

4

Defendants and DWF Defendants as to the appointment of an expert under this paragraph shall be resolved at the Post Validity Trial CMC provided for by paragraph 1 above.

13.    Subject to paragraph 16 below, the DWF Defendants shall have permission to adduce an expert report in the field of expertise set out in paragraph 9.c) above (law of the UAE as regards unjust enrichment) in relation to paragraph 17 of Appendix A to this Order.

14.    Subject to paragraph 16 below, each of (i) the Sanjay Shah Defendants in relation to the Solo WHT Scheme, (ii) the DWF Defendants in relation to the Maple Point WHT Scheme, and (iii) Mr Klar in relation to the Klar Scheme shall have permission to adduce a single expert report (each) in the field of expertise set out in paragraph 9.d) above (accountancy in relation to the trading underlying the WHT applications and the WHT refunds paid by SKAT) in relation to the issues set out in paragraphs 18-21 of Appendix A.

15.    Subject to paragraph 16 below, each Defendant or Defendant group shall have permission to adduce an expert report (each) in the field of expertise set out in paragraph 9.e) above (accountancy in relation to the flow of funds to the Defendants) in relation to the issues set out in paragraphs 22-25 of Appendix A.

16.    All Defendants shall have liberty to apply to seek permission to adduce further or alternative expert evidence in the same or further fields of expertise set out in paragraph 9 above. Any Defendant seeking permission under this part shall notify the other parties in writing as soon as possible and in any event by no later than 21 days before the date of the Post Validity Trial CMC provided for by paragraph 1 above.

17.    The parties shall have liberty to apply to vary Appendix A to this Order, in particular following any amendments to the parties' statements of case.

18.    The Claimant shall file and serve its expert reports in the field of expertise set out in paragraphs 9.d) (accountancy in relation to the trading underlying the WHT applications and the WHT refunds paid by SKAT) and 9.e) above (accountancy in relation to the flow of funds to the Defendants) by 4pm on 14 July 2023.

C/199/5

19.    All accountancy reports (in the field of expertise set out in paragraphs 9.d) (accountancy in relation to the trading underlying the WHT applications and the WHT refunds paid by SKAT) and 9.e) above (accountancy in relation to the flow of funds to the Defendants)) shall be filed by the relevant Defendants (or group of Defendants) by 4pm on 6 November 2023.

20.    Expert reports in the fields of expertise set out in paragraph 9(a)-(c) above (Danish civil law, Danish public law, law of the UAE as regards unjust enrichment) are to be filed and exchanged by all relevant parties by 4pm on 17 November 2023.

21.    The experts in each field shall meet and thereafter shall produce a joint memorandum for each expert discipline referred to in paragraph 9 above by 4pm on 15 December 2023.

22.    Any short supplemental reports (if necessary) shall be exchanged by 4pm on 26 January 2024.

23.    The parties shall be at liberty to call as expert witnesses at trial those experts whose reports they have exchanged pursuant to paragraphs 9-22 above.

**Trial bundle**

24.    The trial shall be conducted using Opus 2 Workspace (the "**eBundle**") as provided for by paragraph 13 of the Order of Mr Justice Andrew Baker dated 16 January 2020.  Directions as to the costs of maintaining the eBundle shall be given at the First or Second Pre-Trial Review. The parties shall liaise as to whether any part of the bundle should be in hard copy as well.

25.    By 4pm on 3 November 2023, the Claimant shall send the Defendants a draft bundle index of the trial eBundle, prepared in accordance with J4.3 and Appendix 7 of the Commercial Court Guide.

26.    The Defendants shall provide any comments on the draft index to the Claimant (and any other Defendant) no later than 4pm on 1 December 2023.

27.    Preparation of the trial eBundle shall be completed in accordance with Appendix 7 to the Commercial Court Guide by not later than 4pm on 26 January 2024.

28.    Pursuant to The Civil Evidence Act 1995 and rules 32.19 (notice requiring proof of authenticity) and 33.2(3) (hearsay notices), all documents in the trial eBundle will be admissible as evidence of the truth of their contents except for documents that are subject to a notice to prove authenticity served in accordance with paragraphs 4 and 5 above.

29.    In advance of the Second Pre-Trial Review the parties shall seek to agree the process by which documents in the trial bundle are adduced in evidence so as to form part of the evidence at the trial, as well as the production of any hard copy bundles.  In the event that the parties are unable to reach agreement, directions shall be given at the Second Pre-Trial Review.

**Main Trial logistics**

30.    By 16 January 2023, the parties shall liaise with each other and the Court as to the location of the Main Trial. An update shall be provided by the Claimant to the Court in the quarterly Progress Note in March 2023.

31.    The progress monitoring date is 15 December 2023. Each party is to provide a completed progress monitoring information sheet to the Commercial Court Listing Office by 4pm at least 6 days before the progress monitoring date (with a copy to each party).

32.    Each party is to provide a completed pre-trial checklist not later than 4pm on 26 January 2024.

33.    There shall be two pre-trial reviews as follows, in both cases reserved to Andrew Baker J:

a)    A one day pre-trial review in the week commencing 11 December 2023 with one day's pre-reading (the "**First Pre-Trial Review**"); and

b)    A one day pre-trial review in the week commencing 26 February 2024 with one day's pre-reading (the "**Second Pre-Trial Review**").

**Other procedural matters for the Main Trial**

34.    Save as varied by this order or further order, the practice and procedures set out in the Commercial Court Guide are to be followed.

7

**Costs**

35.   The costs of this Case Management Conference shall be costs in the case.

## APPENDIX A: ISSUES FOR EXPERT EVIDENCE[1] [2]

**Danish law of tort/delict, proprietary claims, unjust enrichment and limitation**

1.    What are the requirements under Danish law for a claim in tort based on intentional or grossly negligent conduct (issues 43)?

2.    What are the requirements under Danish law for a claim in tort based on negligent conduct (issue 54)?

3.    What legal principles govern the defence of contributory negligence in Danish law and to what type of claims is it a defence (issues 48 and 62)?

4.    Is failure to mitigate a defence under Danish law for a claim in tort and what are the legal principles governing the defence (issues 220, 237 and 255)?

5.    May a claim for damages lapse as a result of acquiescence and if so in what circumstances (issue 221, 238 and 256)?

6.    Can liability for damages be reduced or eliminated entirely if the liability will be unreasonably serious/onerous on the person liable and if so, in what circumstances and what factors are to be taken into account (issue 222, 239 and 257)?

7.    Does Danish law recognise claims in unjust enrichment? Insofar as it does, what are the legal requirements for such a claim and in what circumstances may such a claim be made?  In particular, is restitution for unjust enrichment (as distinct from remedies for ordinary tortious claims) a discretionary remedy based on a residual legal principle which is rarely applied (issues 49 and 58)?

---

[1] The issues identified in this Appendix A shall be subject to further consideration and refinement following the conclusion of the Validity Trial.
[2] References to issues are to the paragraphs in the Consolidated List of Issues for CF1-4.  As regards the List of Issues for CF5, issues 1-67 are  the same as issues 1-66 in the Consolidated List of Issues for CF1-4 (there being 2 issues 6 in that list); the remaining issues in the List of Issues to CF5 do not require expert evidence.

C/199/9

8.      Under what conditions and in respect of what property may proprietary claims be brought (issue 51)?

9.      Is a proprietary and/or restitution claim defeated if the defendant received money in good faith (issue 61)?

10.     What (if any) is the applicable Danish limitation period for each of SKAT's tort, restitution and proprietary claims (issue 60)?

11.     What are the principles for determining at what point in time the Danish limitation period begins to run for each of SKAT's tort, restitution and proprietary claims (issue 60)?

12.     What are the requirements under Danish law for the defences of consent to loss and consent to the risk of loss (issues 220, 237, 255)?

**Danish public law**

13.     Does SKAT have standing to sue (issue 66)?

14.     Is SKAT entitled to recover damages in respect of any loss that has been suffered?

15.     What was the effect as a matter of Danish public law of SKAT's purported rescission and/or reversal of payments made to certain WHT Applicants by declarations made by it in 2016 (Issue 30)?

16.     Was SKAT able to request from the relevant financial regulator(s) details of the contemporaneously reported trade information provided by the Custodians to their regulators to their regulators in accordance with the prevailing regulatory requirements?

**Law of the United Arab Emirates as regards unjust enrichment**

17.     What are the relevant principles of UAE law applicable to claims for unjust enrichment (issues 219, 236 and 254)?

C/199/10

**Accountancy in relation to the trading underlying the WHT Applications and the WHT refunds paid by SKAT**

18.     What (purported) trading structures and/or series of transactions underlay each of the (i) the Solo Model; (ii) the Maple Point Model; and (iii) the Klar Model?  For each WHT Application, which other counterparties and /or other intermediaries were involved in the (purported) underlying trading? How much were each of the counterparties paid and by whom and when and how? (issue 3)

19.     With respect to each of (i) the Solo Model; (ii) the Maple Point Model; and (iii) the Klar Model, did the Custodians hold any Danish shares in their custody accounts, in the custody accounts of any sub-custodians, or with VP Securities (for themselves or on behalf of any of the participants to the transactions purportedly carried out under the relevant models)? (issue 4(a)(i))

20.     With respect to each of (i) the Solo Model; (ii) the Maple Point Model; and (iii) the Klar Model, did the Custodians receive any payments in the amount of dividends declared by Danish companies? (issue 4(a)(ii))

21.     What are the total amounts that were paid out by SKAT under each of the WHT Applications (issues 1 and 2)?

**Accountancy in relation to the flow of funds to the Defendants**

22.     What sums were received by (a) the Alleged Fraud Defendants and (b) the Non-Fraud Defendants as a result of each of the Solo WHT Scheme, Maple Point WHT Scheme and the Klar WHT Scheme? (issues 6 and 23(a))

23.     In respect of the sums received by (a) the Alleged Fraud Defendants and (b) the Non-Fraud Defendants as a result of each of the Solo WHT Scheme, Maple Point WHT Scheme and the Klar WHT Scheme, can such sums be traced to funds emanating from SKAT? (issues 6 and 23(a))

24.    What such traceable proceeds (if any) have been retained by each such Alleged Fraud Defendant (issue 28(a))?

25.    What (if any) traceable proceeds of the money paid by SKAT were used:

    a)      to acquire shares in Varengold Bank AG and, if so, what number of shares and how?

    b)      to acquire shares in Dero Bank AG and, if so, what number of shares and how?

    (issue 7)

<u>CL-2018-000297, CL-2018-000404, CL-2018-000590,</u>
<u>CL-2019-000487 & CL-2020-000369</u>

CL-2018-000297

**IN THE HIGH COURT OF JUSTICE**
**BUSINESS AND PROPERTY COURT OF ENGLAND AND WALES**
**KING'S BENCH DIVISION**
**COMMERCIAL COURT**

The Hon. Mr Justice Andrew Baker (in public)
9 June 2023

BETWEEN:

**SKATTEFORVALTNINGEN**
**(the Danish Customs and Tax Administration)**

<u>Claimant</u>

-and-

**SOLO CAPITAL PARTNERS LLP (in special administration) & OTHERS**

<u>Defendants</u>

_____

**JUNE 2023 CASE MANAGEMENT ORDER**
_____

**UPON** there being five sets of claims with numbers CL-2018-000297, CL2018-000404, CL-2018-000590, CL-2019-000487 and CL-2020-000369, which were consolidated by the Orders of Mr Justice Jacobs dated 27 June 2018, Mrs Justice Cockerill dated 12 October 2018, Mr Justice Andrew Baker dated 11 May 2020 and 25 January 2021 (the "**Consolidated Proceedings**")

**AND UPON** the Order of Mr Justice Andrew Baker dated 16 July 2020, inter alia providing for a preliminary trial of the issues listed in paragraphs 2 to 9 of Annex B to that Order (the "**Validity Trial**")

**AND UPON** the Order of Mr Justice Andrew Baker dated 11 May 2022 (the "**May 2022 CMC Order**") inter alia providing for a trial in the Consolidated Proceedings to be listed to commence on 15 April 2024 (the "**Main Trial**")

**AND UPON** the Order of Mr Justice Foxton dated 21 November 2022, inter alia giving directions (as thereafter amended) in respect of amendments to the parties' pleadings (the "**November 2022 Directions**")

**AND UPON** the Order of Mr Justice Andrew Baker dated 2 December 2022, inter alia setting directions to the Main Trial (the "**Main Trial Directions Order**")

1

**AND UPON** the Court handing down Judgment following the Validity Trial on 24 March 2023 (the "**Validity Issues Judgment**")

**AND UPON** the Order of Mr Justice Andrew Baker dated 24 March 2023, inter alia giving permission and directing a timetable for the parties to make amendments to their pleadings that are consequential on the Validity Issues Judgment (the "**Validity Issues Order**")

**AND UPON** the Claimant's Application dated 21 April 2023 for retrospective amendment of the Orders of Mr Justice Andrew Baker dated 11 May 2022 and of Mr Justice Foxton dated 12 September 2022 and for permission to rely upon certain documents at trial and for relief from sanctions (the "**Dubai Reports Application**")

**AND UPON** the Defendants not having raised any objection to the Dubai Reports Application

**AND UPON** the Order of Mr Justice Andrew Baker dated 18 May 2023, permitting the Claimant to make further amendments to the Particulars of Claim and Schedules thereto (the "**May 2023 Pleadings Order**")

**AND UPON** the Claimant's claims being claims relating to WHT Applications made by WHT Applicants as a result of trading structures and/or series of transactions referred to in the Particulars of Claim (without prejudice to the Claimant's allegations that they involved sham trading) as:

- the Solo Model as used in 2012-2013 ("**Solo Model 12/13**" cases) or the Solo Model as used in 2014-2015 ("**Solo Model 14/15**" cases), some Solo Model 14/15 cases involving multiple sellers contracting to sell shares through brokers to multiple buyers ("**Sub-Variant 1**" cases) and some Solo Model 14/15 cases involving multiple sellers contracting to sell shares through brokers to a single buyer ("**Sub-Variant 2**" cases);

- the Maple Point Model as used in 2014 ("**Maple Point Model 2014**" cases), all involving either Indigo Securities ("**Indigo**" cases) or North Channel Bank ("**NCB**" cases); or the Maple Point Model as used in 2015 ("**Maple Point Model 2015**" cases), all involving either NCB cases, or Lindisfarne Partners ("**Lindisfarne**" cases), contracting as Custodian; or

- the Klar Model involving Salgado Capital contracting as Custodian ("**Salgado**" cases)

**AND UPON** hearing from counsel for the Claimant and for the Sanjay Shah Defendants, the DWF Defendants, and the Lui Defendants, the solicitors for Mr Bains, and Mr Jain in person

**IT IS ORDERED AND DIRECTED THAT:**

**PTR Listing**

1. The Pre-Trial Review listing for December 2023 ("the **December PTR**") shall be extended to 3 days, 12-14 December 2023 (reading on 12 December, sitting on 13-14 December).

**Main Trial Listing**

2. Paragraph 24 of the May 2022 CMC Order is varied, subject to review at the December PTR, such that the Main Trial shall be listed to commence on 9 April 2024 instead of 15 April 2024 and to include the second half of Hilary Term 2025, for closing argument (w/c 3 March 2025 to w/c 7 April 2025 inclusive).

3. The Main Trial shall be structured as follows, unless otherwise ordered at a Pre-Trial Review, with a more detailed provisional trial timetable to be settled at the December PTR, namely:

   a. 9-11 April 2024 – not sitting (reading time);

   b. 15-18 and 22-25 April 2024 – non-contentious documentary openings;

   c. 29 April-2 May, 7-9 May and 13-16 May 2024 – Claimant's factual evidence;

   d. 20-23 May 2024 – Defendants' factual evidence (Chapter 1: Sanjay Shah Defendants' witnesses);

   e. 28-31 May and 3 June 2024 – not sitting (Whitsun vacation);

   f. 4-7 and 10-11 June 2024 – Defendants' factual evidence (Chapter 1 (cont.): Sanjay Shah Defendants' witnesses);

   g. 12-13, 17-20, and 24-27 June 2024 – Defendants' factual evidence (Chapter 2: DWF Defendants' witnesses);

   h. 1-2 July 2024 – not sitting (reading time);

   i. 3-4 and 8-11 July 2024 – Defendants' factual evidence (Chapter 3: Mr Klar's witnesses; and Chapter 4: Lindisfarne Partners' and Ms/Mr Brown's witnesses);

j.   15-18 and 22-25 July 2024 – Defendants' factual evidence (Chapter 5: witnesses of Mr Patterson, Mr Smith, Mr Murphy, Oakley / Mitchell Defendants, Körner Defendants and Ms Bhudia):

k.   29-31 July 2024 – not sitting (overrun, if required);

l.   August and September 2024 – not sitting (long vacation);

m.   2-4 and 7-10 October 2024 – Defendants' factual evidence (Chapter 6: witnesses of Jain Defendants, Godson Defendants, Mr Preston, Mr Fletcher and Mr Devonshire);

n.   14-17 and 21-24 October 2024 – Defendants' factual evidence (Chapter 7: witnesses of the PS/GoC Defendants, Ms Stratford, Messrs Knott and Hoogewerf, the Lui Defendants, Mr Bains and Usha Shah);

o.   28-31 October 2024 – not sitting (mid-term break);

p.   4-7 and 11-14 November 2024 – not sitting (reading time for expert evidence);

q.   18-21 and 25-28 November, 2-5 and 9-12 December 2024 – expert evidence;

r.   16-19 December 2024 – not sitting (overrun, if required);

s.   3-6, 10-13, 17-20, 24-27 and 31 March, and 1-3 April 2025 – closing argument;

t.   7-10 April 2025 – not sitting (overrun, if required).

4. The Main Trial will be conducted as a hybrid hearing, with some participants present in person in the main court room, which shall be Rolls Building Court 26 unless otherwise notified by the Court, and others attending remotely by video link. The hearing will not be broadcast other than to any overflow court room within the Rolls Building and a video link will be provided only to participants who have been identified to the Court and authorised by the Court to attend by that means. The Claimant shall liaise with the Defendants, and with the Commercial Court Listing Office, so as to agree a procedure, with timed notification requirements, for informing the Listing Office of the sitting days when an overflow court room will be requested.

5. For the purposes of paragraph 4 above, and unless otherwise ordered at a Pre-Trial Review or upon specific application, a participant must be:

a.   A party

b.  A legal representative of a party or other representative of a party identified to the Court and authorised by the Court to attend remotely;

c.  A trial witness, or an expert advisor to a party; or

d.  A member of the Opus 2 transcription and digital platform support team assisting the court and the parties for the hearing.

6.  The hearing will be in public, with space in the court room for members of the public and/or representatives of the press to attend in person.

7.  Further directions as regards the logistics for the use of the main court room, overflow court room and permission to receive the video link will be given at the December PTR.

**Applicable law at trial**

8.  Save insofar as a Defendant has pleaded (or seeks and obtains permission to plead hereafter) a positive case that the claims against it are governed by a system of law other than English law (as opposed to, for example, a non-admission as to governing law or an averment that the Claimant is put to proof as to governing law), the claims against that Defendant will be determined by reference solely to English law.

**Sample Trades**

9.  The issues in dispute in these proceedings shall be determined in the Main Trial on the basis that the sample trades identified in the "**Sample Trades List**" spreadsheet appended to this Order (the "**Sample Trades**") are representative of the trading structures and/or series of transactions in Solo Model 12/13 cases, Solo Model 14/15 cases (including where applicable Sub-Variant 1 or Sub-Variant 2 cases), Maple Point Model 2014 cases (and more specifically within that category, as applicable, Indigo or NCB cases) or Maple Point Model 2015 cases (and more specifically within that category, as applicable, NCB or Lindisfarne cases), and Salgado cases, all as respectively indicated by columns M and N of the "**Full Trades List**" spreadsheet also appended to this Order.

**Deadlines for amendments to pleadings and case management**

10. The Validity Issues Order is varied as follows:

a.  Paragraph 6(b) is amended such that the date for the Sanjay Shah Defendants to file

and serve any amended Defences pursuant to paragraph 5 of the Validity Issues Order or the November 2022 Directions, as well as pursuant to paragraph 6 of the May 2023 Pleadings Order, shall be by 4pm on 23 June 2023 in relation to the Defence to the Seventh Amended Particulars of Claim, and by 6pm on 18 July 2023 in relation to the Schedules to the Particulars.

b. Paragraph 6(c) is amended such that the date for all unrepresented Defendants to file and serve any amended Defences pursuant to paragraph 5 of the Validity Issues Order or the November 2022 Directions, as well as pursuant to paragraph 6 of the May 2023 Pleadings Order, shall be by 4pm on 21 July 2023.

c. Paragraph 6(d) is amended such that the date for the Claimant to file and serve any amended Replies to any Defences served pursuant to paragraphs 6(a) to 6(c) of the Validity Issues order, shall be by 4pm on 11 August 2023.

11. The deadlines in paragraph 7 of the Validity Issues Order in relation to the List of Issues, List of Common Ground and List of Issues for Disclosure are varied as follows:

a. By 4pm on 14 July 2023, the Claimant shall circulate draft updated List of Issues, List of Common Ground and List of Issues for Disclosure to all parties.

b. By 4pm on 11 August 2023, the Defendants shall provide their initial comments on the draft updated List of Issues, List of Common Ground and List of Issues for Disclosure to all parties.

c. By 4pm on 13 September 2023, the Claimant shall

i. identify to all parties any additional issues, points of common ground and issues for disclosure arising solely from its amended Replies; and

ii. provide its comments in reply on the Defendants' draft updated List of Issues, List of Common Ground and List of Issues for Disclosure to all parties.

d. On 18 or 19 September 2023, there shall be (i) a series of calls and /or meetings between junior counsel, and (ii) a series of calls and/or meetings between the Claimant's solicitors and any Defendants who have not instructed counsel, to agree or narrow the issues in relation to the draft updated List of Issues, List of Common Ground and List of Issues for Disclosure.

e. By 4pm on 22 September 2023, the Claimant shall circulate the final updated List of Issues, List of Common Ground and List of Issues for Disclosure to all parties.

**Witness Evidence etc.**

12. The Main Trial Directions Order is varied as follows:

a. Paragraph 4 is amended such that the date for exchange of witness statements of fact (and hearsay notices where required by rule 33.2) shall be 13 October 2023;

b. Paragraph 5 is amended such that the date for signed supplemental witness statements of fact (and hearsay notices where required by rule 33.2) shall be 4pm on 17 November 2023; and

c. Paragraph 7 is amended such that the date for the parties to file and serve any notices to prove the authenticity of documents pursuant to rule 32.19 shall be 4pm on 17 November 2023.

**Expert Evidence**

13. The Main Trial Directions Order is varied as follows:

a. Paragraph 8 is amended such that the issues for expert evidence are as set out in Appendix A to this Order.

b. Paragraph 9(d) is amended to read as follows: "9(d) Accountancy and market practice in relation to the trading underlying the WHT Applications and the WHT refunds paid by SKAT".

c. Paragraph 14 is amended so that (in addition to the permission for a single expert accountant under paragraph 14 of the Main Trial directions) the DWF Defendants have permission to adduce evidence from a market practice expert on matters of market practice so far as relevant to issues 18A and 18B at Annex A to this order.

d. Paragraph 18 is amended such that the date for the Claimant to file and serve its accountancy and market practice expert report pursuant to paragraph 9(d) as amended by sub-paragraph (b) above shall be 4pm on 28 July 2023;

e.  Paragraph 18 is amended such that the date for the Claimant to file and serve its expert report in the field of expertise set out in paragraph 9(e) (accountancy in relation to the flow of funds to the Defendants) shall be 4pm on 11 August 2023;

f.  Paragraph 19 is amended such that the date for the Defendants (or group of Defendants) to file and serve any expert report pursuant to paragraph 9(d) as amended by sub-paragraph (b) above or pursuant to paragraph 9(e) shall be 4pm on 29 November 2023;

g.  Paragraph 20 is amended such that the date for expert reports on foreign law pursuant to paragraph 9(a)-(c) to be filed and exchanged by all relevant parties shall be 4pm on 29 November 2023.

h.  Paragraph 21 is amended such that the date for experts in each field to meet and thereafter to produce a joint memorandum for each expert discipline referred to in paragraph 9 shall be 4pm on 12 January 2024.

i.  Paragraph 22 is amended such that the date for any short supplemental expert reports (if necessary) in all fields of expertise set out in paragraph 9 other than paragraph 9(d) (i.e., (i) Danish civil law, (ii) Danish public law, (iii) law of the UAE as regards unjust enrichment, (iv) accountancy in relation to the flow of funds to the Defendants), shall be 4pm on 2 February 2024.

j.  The date for any short supplemental expert reports (if necessary) in the field(s) of expertise set out in paragraph 9(d) (accountancy and market practice in relation to the trading underlying the WHT applications and the WHT refunds paid by SKAT) shall remain 4pm on 26 January 2024.

14. The Sanjay Shah Defendants and DWF Defendants shall confirm in writing to the other parties by 4pm on Friday 8 September 2023 whether or not they will be filing expert evidence under paragraphs 9(a) and/or (c) of the Main Trial directions; and the DWF Defendants shall by the same date confirm in writing to the other parties whether they dispute the applicability of English law to the claims against them to an extent greater than already pleaded by them as regards UAE law for unjust enrichment claims, if so providing at the same time drafts for pleading amendments to set out their positive case in that regard for which they will seek consent or permission.

**Updated Case Management Information and applications for evidence by remote means**

15. By 4pm on 10 November 2023 each party shall file, and (except for the Claimant) shall serve on the Claimant, a supplementary case management information sheet providing their answers to the questions set out in Appendix B to this Order, and:

    a.  any party failing to do so must attend in person or by a legal representative at the December PTR;

    b.  no party may call any factual witness at trial, cross-examine any factual or expert witness called by any other party at trial, or make submissions at trial, except to the extent indicated in their supplementary case management information sheet filed under this paragraph, unless permission is granted upon an application made to the trial judge either prior to the Main Trial, or at the Main Trial but prior to the first witness being called on Monday 29 April 2024. (For the avoidance of doubt, no party may call any expert witness at trial unless they have permission to do so under a previous case management order in the case, under paragraph 13 of this Order, or under a further case management order made hereafter upon application to the designated judge);

    c.  the Claimant by its solicitors shall by 4pm on 17 November 2023 provide by email to the Clerk to Mr Justice Andrew Baker, copied to all unrepresented Defendants and to the legal representatives of all represented Defendants, a complete set of the supplementary case management information sheets served on the Claimant pursuant to this paragraph, listing in the covering email the parties (if there are any) who have not done so.

16. Any application for permission for any expert witness to give evidence remotely shall be made by 4pm on 10 November 2023.

**Dubai Reports Application**

17. Pursuant to CPR 3.9, the Claimant is granted relief from any sanctions (including the sanction imposed by paragraph 12.5 of Practice Direction 57AD) arising from its failure to disclose certain expert reports disclosed in the Dubai proceedings (the "**Dubai Reports**") (i) by 31 May 2022 in the case of the Dubai Reports which came into the Claimant's possession before 1 December 2020, and (ii) by 16 December 2022 in the case of the Dubai Reports which came into the Claimant's possession on or after 1 December 2020 up until 5 September 2022, and

pursuant to paragraph 12.5 of Practice Direction 57AD, is permitted to rely on that disclosure in the Consolidated Proceedings.

18. Pursuant to CPR 3.1(2)(a), paragraph 19(b) of the order of Mr Justice Andrew Baker dated 11 May 2022 and paragraph 1 of the order of Mr Justice Foxton dated 12 September 2022 are retrospectively amended such that the time for disclosure of the Dubai Reports falling within paragraph 1 above is extended to 4.30pm on 31 May 2023.

## **Costs**

19. Save that there shall be no order as to the costs of the Dubai Reports Application, the costs of this Case Management Conference shall be costs in the case.

## APPENDIX A: ISSUES FOR EXPERT EVIDENCE[1]

**Danish law of tort/delict, proprietary claims, unjust enrichment and limitation**

1.    What are the requirements under Danish law for a claim in tort based on intentional or grossly negligent conduct (issues 43)?

2.    What are the requirements under Danish law for a claim in tort based on negligent conduct (issue 54)?

3.    What legal principles govern the defence of contributory negligence in Danish law and to what type of claims is it a defence (issues 48 and 62)?

4.    Is failure to mitigate a defence under Danish law for a claim in tort and what are the legal principles governing the defence (issues 220, 237 and 255)?

5.    May a claim for damages lapse as a result of acquiescence and if so in what circumstances (issue 221, 238 and 256)?

6.    Can liability for damages be reduced or eliminated entirely if the liability will be unreasonably serious/onerous on the person liable and if so, in what circumstances and what factors are to be taken into account (issue 222, 239 and 257)?

7.    Does Danish law recognise claims in unjust enrichment? Insofar as it does, what are the legal requirements for such a claim and in what circumstances may such a claim be made? In particular, is restitution for unjust enrichment (as distinct from remedies for ordinary tortious claims) a discretionary remedy based on a residual legal principle which is rarely applied (issues 49 and 58)?

8.    Under what conditions and in respect of what property may proprietary claims be brought (issue 51)?

9.    Is a proprietary and/or restitution claim defeated if the defendant received money in good faith (issue 61)?

---

[1] References to issues are to the paragraphs in the Consolidated List of Issues for CF1-4.  As regards the List of Issues for CF5, issues 1-67 are  the same as issues 1-66 in the Consolidated List of Issues for CF1-4 (there being 2 issues 6 in that list); the remaining issues in the List of Issues to CF5 do not require expert evidence.

10. What (if any) is the applicable Danish limitation period for each of SKAT's tort, restitution and proprietary claims (issue 60)?

11. What are the principles for determining at what point in time the Danish limitation period begins to run for each of SKAT's tort, restitution and proprietary claims (issue 60)?

12. What are the requirements under Danish law for the defences of consent to loss and consent to the risk of loss (issues 220, 237, 255)?

**Danish public law**

13. Does SKAT have standing to sue (issue 66)?

14. Is SKAT entitled to recover damages in respect of any loss that has been suffered?

15. What was the effect as a matter of Danish public law of SKAT's purported rescission and/or reversal of payments made to certain WHT Applicants by declarations made by it in 2016 (Issue 30)?

16. Was SKAT able to request from the relevant financial regulator(s) details of the contemporaneously reported trade information provided by the Custodians to their regulators in accordance with the prevailing regulatory requirements?

**Law of the United Arab Emirates as regards unjust enrichment**

17. What are the relevant principles of UAE law applicable to claims for unjust enrichment (issues 219, 236 and 254)?

**Accountancy and market practice in relation to the trading underlying the WHT Applications and the WHT refunds paid by SKAT**

18. For each WHT Application, how much was each of the counterparties paid and by whom and when and how? (issue 3)

18A. To the extent (if at all) that it involves expertise to identify, what trading structures and/or series of transactions were (purportedly) constituted or provided for by the Sample Trades?

18B. To what extent were the Sample Trades consistent with any standard market practice? (issues 5(a)-(c))

12

19.   With respect to each of the Sample Trades, did the Custodians hold any Danish shares in their custody accounts, in the custody accounts of any sub-custodians, or with VP Securities (for themselves or on behalf of any of the participants to the transactions purportedly carried out under the relevant models)? (issues 4(a)(i) and 6(a))

20.   With respect to each of the Sample Trades, did the Custodians receive any payments in the amount of dividends declared by Danish companies? (issues 4(a)(ii) and 6(b))

21.   What are the total amounts that were paid out by SKAT under each of the WHT Applications (issues 1 and 2)?

**Accountancy in relation to the flow of funds to the Defendants**

22.   What sums were received by (a) the Alleged Fraud Defendants and (b) the Non-Fraud Defendants as a result of each of the Solo WHT Scheme, the Maple Point WHT Scheme and the Klar WHT Scheme? (issues 6 and 23(a))

23.   In respect of the sums received by (a) the Alleged Fraud Defendants and (b) the Non-Fraud Defendants as a result of each of the Solo WHT Scheme, Maple Point WHT Scheme and the Klar WHT Scheme, can such sums be traced to funds emanating from SKAT? (issues 6 and 23(a))

24.   What such traceable proceeds (if any) have been retained by each such Alleged Fraud Defendant (issue 28(a))?

25.   What (if any) traceable proceeds of the money paid by SKAT were used:

   a)      to acquire shares in Varengold Bank AG and, if so, what number of shares and how?

   b)      to acquire shares in Dero Bank AG and, if so, what number of shares and how?

   (issue 7)

## APPENDIX B: CASE MANAGEMENT INFORMATION QUESTIONS TO BE ANSWERED PURSUANT TO PARAGRAPH 15 OF THE ORDER

**Participation in the Main Trial**

1. Do you intend to attend the Main Trial in whole or in part? If yes, will you be legally represented at the Main Trial?

2. Do you intend to call any factual witness (including, if applicable, yourself), at the Main Trial? If yes, please answer questions 5 to 7 below.

3. Do you intend to cross-examine any of the factual or expert witnesses of SKAT or any Defendants at the Main Trial? If yes, please identify the parties whose (i) factual, and (ii) expert witnesses, you intend to cross-examine.

4. Do you intend to make oral submissions to the Court at the Main Trial? If yes, please indicate if you intend to make oral submissions in (i) Opening (at the start of the trial, before any witness evidence) and/or (ii) Closing (at the end of the trial, after all the witness evidence).

**Factual Evidence**

5. State the name of each factual witness you intend to call to give evidence at the Main Trial (including, if applicable, yourself).

6. Will interpreters be required for any witness named in answer to question 5 above?

7. Do you wish any witness named in answer to question 5 above to give oral evidence remotely? If so, please identify each witness to whom this applies, state briefly the reason why you wish that witness to be allowed to give their evidence remotely, and state the country and city from which you wish the witness to be allowed to give their evidence.

14

CL-2018-000297, CL-2018-000404, CL-2018-000590, CL-2019-000487 & CL-2020-000369
(CONSOLIDATED)

CL-2018-000297

**IN THE HIGH COURT OF JUSTICE**
**BUSINESS AND PROPERTY COURT OF ENGLAND AND WALES**
**KING'S BENCH DIVISION**
**COMMERCIAL COURT**

19 Oct 2023

**Before: Mr Justice Foxton**
**(In public, by remote hearing conducted via Microsoft Teams)**
**Date: 19 October 2023**

**BETWEEN:**

**SKATTEFORVALTNINGEN**
**(the Danish Customs and Tax Administration)**

Claimant

**-and-**

**SOLO CAPITAL PARTNERS LLP (in special administration) & OTHERS**

Defendants

---

**OCTOBER 2023 CASE MANAGEMENT ORDER**

---

**UPON** there being five sets of claims with numbers CL-2018-000297, CL2018-000404, CL-2018-000590, CL-2019-000487 and CL-2020-000369, which were consolidated by the Orders of Mr Justice Jacobs dated 27 June 2018, Mrs Justice Cockerill dated 12 October 2018, Mr Justice Andrew Baker dated 11 May 2020 and 25 January 2021 (the "**Consolidated Proceedings**")

**AND UPON** the Order of Mr Justice Andrew Baker dated 2 December 2022, inter alia setting directions to the Main Trial (the "**December 2022 Directions Order**")

**AND UPON** the Order of Mr Justice Andrew Baker dated 9 June 2023, inter alia varying the December 2022 Directions Order and setting further directions to the Main Trial (the "**June 2023 Directions Order**")

**AND UPON** the application of the Sanjay Shah Defendants and Usha Shah (together the "**Shah Defendants**") dated 29 September 2023 for certain extensions of time in relation to witness statements and expert reports (the "**First Shah Application**")

**AND UPON** the application of the DWF Defendants dated 6 October 2023 for certain extensions of time in relation to witness statements (the "**DWF Application**")

1

**AND UPON** the application of the Claimant dated 11 October 2023 for certain extensions of time in relation to the finalisation of the List of Issues and the trial bundle (the "**SKAT Application**")

**AND UPON** requests by Mr Fletcher, the Godson Defendants and the Jain Defendants for extensions of time to serve their witness statements in correspondence all dated 12 October 2023

**AND UPON** the application of Mrs Shah dated 13 October 2023 for further extensions of time in relation to witness statements (the "**Second Shah Application**")

**AND UPON** the application of Mr Klar dated 13 October 2023 for certain extensions of time in relation to witness statements (the "**Klar Application**")

**AND UPON** hearing from counsel for the Claimant, the Shah Defendants, and the DWF Defendants

**IT IS ORDERED THAT:**

<u>List of Issues and List of Common Ground</u>

1.  The deadlines in paragraphs 11(c) to 11(e) of the June 2023 Directions Order (which in turn varied the Validity Issues Order as defined therein) in relation to the List of Issues and List of Common Ground are varied as follows:

    a.  By 4pm on 13 October 2023, the Claimant shall:

        i.  identify to all parties any additional issues, points of common ground and issues for disclosure arising solely from its amended Replies; and

        ii.  provide its comments in reply on the Defendants' draft updated List of Issues and List of Common Ground to all parties.

    b.  On 30 October 2023, there shall be (i) a series of calls and/or meetings between junior counsel, and (ii) a series of calls and/or meetings between the Claimant's solicitors and any Defendants who have not instructed counsel, to agree or narrow the issues in relation to the draft updated List of Issues and List of Common Ground.

    c.  By 4pm on 6 November 2023, the Claimant shall circulate the final updated List of Issues and List of Common Ground to all parties.

Witness Statements

2. To the extent it has not already been complied with, paragraph 12 of the June 2023 Directions Order (which in turn varied paragraphs 4, 5 and 7 of the December 2022 Directions Order) regarding primary witness statements and hearsay notices shall be varied and replaced by the following directions:

   a. Daniel Fletcher shall have permission to file and serve his primary witness statements of fact (and hearsay notices where required by rule 33.2) by 4pm on 16 October 2023.

   b. Any Defendant (other than Mr Klar and the Sanjay Shah Defendants), which has not served the primary witness statements of fact on which it wishes to rely at trial (and hearsay notices where required by rule 33.2), shall file and serve them on all parties by 4pm on 27 October 2023. This is a final extension of time.

   c. By 4pm on 10 November 2023, Mr Klar shall file and serve on all parties his primary witness statements of fact (and hearsay notices where required by rule 33.2). This is a final extension of time.

   d. By 4pm on 17 November 2023, the Sanjay Shah Defendants shall file and serve on all parties their primary witness statements of fact (and hearsay notices where required by rule 33.2). This is a final extension of time for the witness statements of any witness other than Mr Sanjay Shah.

   e. For the avoidance of doubt, the parties may not use the permission for supplemental witness evidence (at paragraph 3 below) to delay service of their primary witness evidence pending sight of the witness statements of other parties.

3. With respect to supplemental witness statements (and hearsay notices where required by rule 33.2):

   a. By 4pm on 1 December 2023, all parties shall notify all other parties whether they intend to rely at trial on a supplemental witness statement from a witness who has not served a primary witness statement.

b. By 5pm on 5 December 2023, all parties other than the Sanjay Shah Defendants shall file and serve on all parties any signed supplemental witness statements of fact (and hearsay notices where required by rule 33.2) in reply to the primary witness evidence (and hearsay notices) served pursuant to paragraph 2 above. This is a final extension of time save for supplemental witness statements of fact which are responsive to the witness evidence of the Sanjay Shah Defendants;

c. By 4pm on 21 December 2023, the Sanjay Shah Defendants shall file and serve on all parties supplemental witness statements of fact (and hearsay notices where required by rule 33.2) in reply to the primary witness evidence (and hearsay notices) served pursuant to paragraph 2 above.

4. By 4pm on 20 December 2023, the parties shall file and serve any notices to prove the authenticity of documents pursuant to rule 32.19.

Expert Evidence – Accountancy and market Practice in relation to the trading underlying the WHT Applications and WHT refunds paid by SKAT

5. Paragraphs 13(f), 13(h) and 13(j) of the June 2023 CMC Order (which in turn varied the December 2022 Directions Order) are varied as follows in relation to the field of expertise of "Accountancy and market practice in relation to the trading underlying the WHT Applications and WHT refunds paid by SKAT" (as permitted by paragraph 9(d) of the December 2022 Directions Order, "**Trading**") :

a. Save as provided for by paragraph (b) below, the deadline for any Defendants or group of Defendants (as permitted by paragraph 14 of the December 2022 Directions Order) to file and serve any expert report in the field of Trading shall remain 4pm on 29 November 2023.

b. The deadline for the Sanjay Shah Defendants to file and serve any expert report in the field of Trading is extended to 4pm on 8 January 2024.

c. The deadline for the Trading experts to meet and produce a joint memorandum is extended to 4pm on 5 February 2024.

d. The deadline for the parties to file and serve any short supplemental Trading expert reports (if necessary) is extended to 4pm on 19 February 2024.

4

<u>Trial Bundles</u>

6.  The deadlines in paragraphs 25 to 27 of the December 2022 Directions Order are varied as follows:

    a.  By 4pm on 17 November 2023, the Claimant shall send the Defendants a draft bundle index of the trial eBundle, prepared in accordance with J4.3 and Appendix 7 of the Commercial Court Guide.

    b.  The Defendants shall provide any comments on the draft index to the Claimant (and any other Defendant) by 4pm on 15 December 2023.

    c.  Preparation of the trial eBundle shall be completed in accordance with Appendix 7 to the Commercial Court Guide by 4pm on 2 February 2024.

<u>Costs</u>

7.  The costs of the First and Second Shah Applications, the DWF Application, the SKAT Application, and the Klar Application shall be costs in the case.