# Exhibit 5

| | |
|---|---|
| **From:** | Michael Ben-Jacob <michael.ben-jacob@kayescholer.com> |
| **To:** | John van Merkensteijn <jhvm@argremgt.com>;Matthew Stein <mstein@maplept.com>;Richard Markowitz <rmarkowitz@argremgt.com>;"Jérôme LHOTE" <jlhote@maplept.com>;Adam Larosa <alarosa@argremgt.com> |
| **CC:** | Wells, Peter <peter.wells@kayescholer.com>;Kathleen Wechter <kathleen.wechter@kayescholer.com> |
| **Sent:** | 6/20/2014 3:06:04 PM |
| **Subject:** | Delvian -- Disqualified Persons Memorandum -- Final |
| **Attachments:** | Delvian Plan Disqualified Persons.pdf; Exhibit A.pdf |

All,

Attached for your records is our finalized memorandum discussing Disqualified Person issues as they relate to the Delvian structure.  Please let me know if you have any questions.

Regards.

mbj


***

IRS CIRCULAR 230 DISCLOSURE: To ensure compliance with Treasury Department regulations, we inform you that any U.S. federal tax advice contained in this correspondence (including any attachments) is not intended or written to be used, and cannot be used for the purpose of (i) avoiding penalties that may be imposed under the U.S. Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

Michael Ben-Jacob
KAYE SCHOLER LLP
425 Park Avenue | New York, New York 10022
T: +1 212.836.8310 | F: +1 212.836.6310
michael.ben-jacob@kayescholer.com | www.kayescholer.com

This message may contain confidential and/or legally privileged information from the law firm Kaye Scholer LLP. If delivered to anyone other than the intended recipient, please notify the sender immediately by return email or by telephone (+1 212.836.8310) and delete the message, along with any attachments, from your computer. Thank you.



**PLAINTIFF'S TRIAL EXHIBIT**
**PX-1249**
Case No.18-MD-2865(LAK)

**HIGHLY CONFIDENTIAL   PRIVILEGED - SUBJECT TO 502(d) ORDER**          **JHVM_0010589**

# KAYE SCHOLER LLP

Michael Ben-Jacob
212.836.8310
michael.ben-jacob@kayescholer.com

425 Park Avenue
New York, New York 10022-3598
212.836.8000
Fax 212.836.6310
www.kayescholer.com

## MEMORANDUM

| | |
|---|---|
| **TO:** | John H. van Merkensteijn, III |
| | Matthew R. Stein |
| | Jerome Lhote |
| | Richard Markowitz |
| | Adam LaRosa |
| **FROM:** | Michael Ben-Jacob |
| **DATE:** | June 20, 2014 |
| **SUBJECT:** | Delvian Plan Trades:  Transactions with "Disqualified Persons" |

PRIVILEGED & CONFIDENTIAL
ATTORNEY CLIENT COMMUNICATION

### Facts

Delvian LLC Pension Plan (the "Delvian Plan") used the structure referred to as the "Delvian Structure") to implement certain trading transactions as described herein.  The chart attached hereto as Exhibit "A" depicts Delvian structures.  The first part of this memorandum outlines our understanding from discussions with you of the facts and set-up of the Delvian Structure and the organization of the associated structure as well as the trading activity and related operations of the structure.  The second part of this memorandum provides an analysis of certain issues related to transactions with "disqualified persons" under the Internal Revenue Code of 1986 (the "Code").

Delvian Plan Disqualified Persons

CHICAGO • FRANKFURT • LONDON • LOS ANGELES • NEW YORK • PALO ALTO • SHANGHAI • WASHINGTON, DC • WEST PALM BEACH

**KAYE SCHOLER LLP**

John H. van Merkensteijn, III
Matthew R. Stein
Jerome Lhote                                    - 2 -                                    June __, 2014
Richard Markowitz
Adam LaRosa

**I.      Delvian Structure**

      **A.      <u>Set-Up and Organization</u>**

          1.      <u>Delvian Plan</u>.  Delvian Investments LLC, a Delaware limited liability company

("LLC") was formed on January 13, 2011 by Alicia O'Donnell, its sole member.  On or about

May 22, 2012, Delvian LLC established a 401(k) Plan ("Delvian Plan") for the benefit of its sole

principal.  The Delvian Plan was a prototype plan and had received a favorable determination

letter from the Internal Revenue Service, and it did not cover any employees.  The only person

covered by Delvian Plan was the sole member of the LLC who is also an employee of another

entity but also receives payment for self-employment services from parties other than that entity

or its affiliates.

          2.      <u>Delvian Partnership</u>.  Based on their respective contributions to the partnership,

the Delvian Plan was allocated 5% of the capital of the Delvian Partnership, and  Quartet was

allocated 95%.  They each maintained capital accounts in that amount but the Delvian

Partnership Agreement provided that any profits were to be divided as follows:  (i) first, to the

partners in proportion to, and to the extent of, their capital accounts; (ii) then, up to the next

$50,000 to the Delvian Plan; and (iii) thereafter, in proportion to the respective percentage

interests of the partners.[1]  Quartet LLC directly paid certain expenses on behalf of the

Partnership related to the Partnership's initial start-up activities and trading costs and was

reimbursed for such expenses.  Mr. Adam LaRosa was appointed manager of the Partnership

---

[1] We note that, in this instance, the proportionate capital accounts and the percentage interest are the same.

Delvian Plan Disqualified Persons

**K**AYE SCHOLER LLP

John H. van Merkensteijn, III
Matthew R. Stein
Jerome Lhote                              - 3 -                              June __, 2014
Richard Markowitz
Adam LaRosa

with day-to-day ministerial management authority over the Partnership assets.  The Delvian Plan

made an investment in a New York general partnership, known as the Delvian General

Partnership ("Delvian Partnership").  The other partner in the Delvian Partnership was Quartet

Investment Partners LLC, a Delaware limited liability company ("Quartet LLC"), formed on or

about April 19, 2012.  Messrs. van Merkensteijn, Stein, Markowitz and Lhote (or trusts for the

benefit of their respective families) each held a 25% interest in Quartet LLC, with equal

economic and voting rights.  These individuals are also the shareholders of the entity in which

Ms. O'Donnell is an employee.

        3.        Delvian 2013 Partnership.  On or about February 1, 2013, the Delvian Plan and

other partners formed a new general partnership (the "Delvian 2013 Partnership").  The Delvian

2013 Partnership is similar in most respects to the Delvian Partnership, except that the members

are the Delvian Plan, the Bernina Pension Plan ("Bernina"), the AOI Pension Plan ("AOI"), the

Genesha Pension Plan ("Genesha") and the RJM Pension Plan ("RJM") (collectively, the

"Investing Plans").  Each of the latter four plans are qualified under Section 401(a) of the Code.

Each plan is maintained by a single member limited liability company owned by each of Mr. van

Merkensteijn (Bernina), Mr. Stein (AOI), Mr. Lhote (Genesha) and Mr. Markowitz (RJM)

respectively.  The Delvian Plan received a 5% partnership interest in this new Delvian 2013

Partnership and each of Bernina, AOI, Genesha and RJM received a 23.75% partnership interest

in the new Delvian 2013 Partnership based on contributions to the Delvian 2013 Partnership.

The Delvian 2013 Partnership Agreement provides that distributions to the partners shall be

Delvian Plan Disqualified Persons

HIGHLY CONFIDENTIAL  PRIVILEGED - SUBJECT TO 502(d) ORDER                    JHVM_0010592

**K**AYE SCHOLER LLP

John H. van Merkensteijn, III
Matthew R. Stein
Jerome Lhote                          - 4 -                    June __, 2014
Richard Markowitz
Adam LaRosa

made in the following order of priority:  (i) first, in proportion to, and to the extent of, each

partner's capital account; and (ii) thereafter, in proportion to the respective percentage interests

of the partners.[2]

     **B.**    <u>**Trading and Related Operations—In General**</u>

     Solo Capital Partners LLP ("Solo"), a U.K. based financial services firm, presented

certain potential investors with the trading strategy discussed below.  Solo is authorized and

regulated in the U.K. by the Financial Services Authority, but is not regulated by any regulatory

or quasi-regulatory agency in the United States.  Solo is independent of Delvian LLC, Quartet,

the Investing Plans, and any affiliated entity of any of them and there is no common ownership

between Solo, Delvian or any such entity.  We understand that (i) Solo provided the entire

structure of the trading strategy to the investing entity and (ii) the investing entity had little or no

ability to negotiate the financial terms of the arrangement, which were basically the same, or

more favorable to the investing entity, as arrangements that existed between Solo or other

providers which engage in this trading strategy and unrelated third parties who were and are

engaging in similar trading activities with Solo or those other providers.

     The investment and trading strategy outlined by Solo was as follows:  the investing entity

would enter into a custodial agreement with Solo pursuant to which (i) the investing entity would

transfer assets to a custodial account of which Solo was the custodian, (ii) Solo provided the

investing entity with information about the securities of certain publicly traded companies on

---

[2] We note that, in this instance, the proportionate capital accounts and the percentage interests are the same.

Delvian Plan Disqualified Persons

KAYE SCHOLER LLP

John H. van Merkensteijn, III
Matthew R. Stein
Jerome Lhote                          - 5 -                          June __, 2014
Richard Markowitz
Adam LaRosa

certain foreign (non-U.S.) stock exchanges, (iii) on or before the ex-dividend date for such

shares, the investing entity would direct Solo to purchase shares of some or all of the companies

presented by Solo[3], (iv) Solo would guarantee the investing entity's trades vis-à-vis a third-party

broker, allowing the investing entity to make highly leveraged trades, (v) the purchased shares

would be held in the custodial account, (vi) the investing entity would take a short futures

position in shares of such company by selling to an unrelated third party a cash-settled single

stock future, which would not expire until at least one day after the dividend record date of the

purchased shares, (vii) on behalf of the investing entity, a third party would submit a tax

reclamation request to the appropriate authorities with respect to the gross dividend amount

previously withheld on the sale by such authorities, (viii) the investing entity would receive a

payment equal to the net dividend amount of the shares it held, (ix) the investing entity would

cause Solo to sell the shares it holds in the market and settle the futures contract for cash, and

(x) the investing entity would remit a specified percentage of the net dividend amount to Solo

(which would then pay significant fees and expenses incurred in the transactions described above

which fees are separate from third party professional and other fees paid by the investing entity

related to such transactions.)  The purpose of the short futures position was to hedge against loss

of principal in order to minimize or eliminate the economic risk of holding the shares.

The investing entity simultaneously entered into a securities lending agreement with a

third party under which it lent securities in exchange for cash.  We understand that (a) the

---

[3] If some of the shares were too thinly-traded or otherwise deemed unacceptable by the trustees, the investing entity utilized other shares.  This was typically done after additional consultations with Solo.

Delvian Plan Disqualified Persons

HIGHLY CONFIDENTIAL  PRIVILEGED - SUBJECT TO 502(d) ORDER                          JHVM_0010594

**K**AYE SCHOLER LLP

John H. van Merkensteijn, III
Matthew R. Stein
Jerome Lhote                                   - 6 -                              June __, 2014
Richard Markowitz
Adam LaRosa

securities lending arrangements embodied in a number of documents are typical of those entered

into by organizations in the United Kingdom and comply with United States securities lending

regulations, (b) the purpose of this arrangement was to generate the necessary liquidity to

implement the trades, and (c) investing in this arrangement does not guarantee payments to Solo

or indemnify Solo, and no payments or other benefits were received by the investing entity, any

investor or their affiliates.

    As noted, while the decisions as to which securities to purchase are solely within the

purview of the investing entity, they did take into account the recommendations of Solo.  The

trading orders were executed by Mr. Adam LaRosa pursuant to a power of attorney executed by

the Delvian Plan granting him authority to execute trades on behalf of the Plan.

    Under the Custodial Agreement with Solo, the investing entity pays fees to Solo as per

the schedule attached to the Custodial Agreement.  The documents for the transaction indicate

that, of the gross amount payable to the investing entity, the investing entity retained

approximately 34% and the remaining 66% was paid to Solo.  Solo was responsible for paying

significant costs and expenses associated with the transaction, including trading commissions,

legal fees, brokerage fees, accounting fees, tax reclaim service fees, custodial service fees,

leverage providing fees and guaranty fees.   Solo does not break down its expenses so that

investors are not provided with a breakout of what portion of the 66% is compensation to Solo

and its affiliates and what portion pays for expenses paid to other third party service providers.

The investing entity paid its own fees for third party services (legal, accounting, etc.) related to

the transaction.

Delvian Plan Disqualified Persons

**HIGHLY CONFIDENTIAL  PRIVILEGED - SUBJECT TO 502(d) ORDER**          **JHVM_0010595**

**K**AYE SCHOLER LLP

John H. van Merkensteijn, III
Matthew R. Stein
Jerome Lhote                              - 7 -                              June __, 2014
Richard Markowitz
Adam LaRosa

  While the documents provide that the 66% paid to Solo is a "fee" to Solo, the understanding of the parties at the time the transaction was entered into was that Solo and the investing entity were instead effectively engaged in a partnership under which the profits would be shared between them under the above profit allocation, with Solo being responsible for all of the partnership's expenses.

  **C.**  <u>**Delvian Partnership and Transactions**</u>

  The Delvian Partnership transferred funds into a custodial account opened in the name of the Delvian Plan, as agent for the Partnership, with Solo acting as custodian (the "Solo Account"). Solo provides the Delvian Partnership with a list of possible stocks which could be purchased using this account. The partners in the Delvian Partnership, including the trustee of the Delvian Plan, together determine the stocks to be purchased and instruct Mr. LaRosa to execute the purchases pursuant to a power of attorney executed by the Delvian Plan, as agent for the Delvian Partnership. After these instructions are effected, the transactions continue in the same manner as described above. Mr. LaRosa receives compensation of $5,000 for acting as attorney-in-fact and is not separately indemnified by any party for his actions pursuant to the power of attorney or for acting as manager of the Delvian Partnership. The Delvian Plan, as agent for the Delvian Partnership, also entered into a custodial agreement with Solo pursuant to which (i) Solo has custody of the assets of the Delvian Plan which had been contributed to the Delvian Partnership and (ii) Solo arranges for and guarantees the Plan's trades vis-à-vis a third-party broker. The Delvian Plan also opened another account in its own name at First Republic Bank in the United States (the "Delvian Account"). This account was set up to receive any

Delvian Plan Disqualified Persons

**HIGHLY CONFIDENTIAL  PRIVILEGED - SUBJECT TO 502(d) ORDER**                              **JHVM_0010596**

**K**AYE SCHOLER LLP

John H. van Merkensteijn, III
Matthew R. Stein
Jerome Lhote                                    - 8 -                              June __, 2014
Richard Markowitz
Adam LaRosa

distributions from the Delvian Partnership to the Delvian Plan and was not held by the Delvian

Plan on behalf of the Delvian Partnership. The Delvian Account, being an account of the Delvian

Plan and not either of the partnerships discussed herein, has accordingly remained in the name of

the Delvian Plan throughout.

As noted above, notwithstanding the existence of the Delvian Partnership, the Delvian

Plan acted as the nominee for the Delvian Partnership pursuant to terms specified in the

partnership agreement because, for foreign tax purposes, the legal agreements underlying the

transaction are all in the name of the Delvian Plan. We understand that, prior to the creation of

the Delvian 2013 Partnership, the Delvian Partnership distributed the amounts in the Solo

Account which were attributable to the Delvian Partnership to its partners. At the time of

creation of the Delvian 2013 Partnership, the Solo Account had a positive balance, however,

none of these amounts were attributable to an interest in the Delvian Partnership.

The Delvian 2013 Partnership was operated in the same manner as the Delvian

Partnership described above.

**II.     Discussion of Delvian 2013 Partnership Transaction**

**A.     Delvian 2013 Partnership Transaction:  Transactions with Disqualified
         Persons**

A transaction between a retirement plan subject to Section 4975[4] of the Code and a

"disqualified person" (described in Appendix A) that is prohibited under section 4975 of the

Code (described in Appendix A) will be subject to the tax under Section 4975 of the Code

---

[4] All "Section" references herein are to the Code and the Treasury Regulations thereunder.

Delvian Plan Disqualified Persons

**K**AYE SCHOLER LLP

John H. van Merkensteijn, III
Matthew R. Stein
Jerome Lhote                              - 9 -                              June __, 2014
Richard Markowitz
Adam LaRosa

(described below)[5] unless it meets the requirements of a prohibited transaction exemption under

Section 4975.  The Delvian Plan and the other Investing Plans which invest in the Delvian 2013

Partnership are subject to Section 4975 of the Code but should not be subject to ERISA since, as

we understand, they do not cover employees other than the sole proprietor of the company

sponsoring each such plan.

　　　　Based on the facts above and the discussion below, we conclude that an argument can be

made that the "service provider exemption" should apply to these transactions as described

herein.  In order to prevail in such an argument, one would have to prove, as discussed below,

that the fees paid by the Investing Plans were reasonable fees.

　　B.　　__Taxes under Section 4975__

　　Section 4975 of the Code imposes a tax of 15% of the "amount involved"[6] on any

prohibited transaction for each year (or part of a year) in the "taxable period".  The taxable

period begins on the date the prohibited transaction occurs and ends on the earliest of (i) the date

of mailing a notice of deficiency with respect to the 15% tax, (ii) the date on which the tax is

assessed or (iii) the date on which the prohibited transaction is corrected[7].  Section 4975 provides

that this tax is payable by any disqualified person who participates in the prohibited transaction

---

[5] The penalty for a prohibited transaction involving an individual retirement account ("IRA") is generally that the IRA ceases to be an individual retirement account as of the first day of the taxable year in which the prohibited transaction occurred, and the IRA is treated as if there were a distribution on that first day in an amount equal to the fair market value (on such first day) of all assets in the account (on such first day).
[6] The "amount involved" generally is defined in Section 4975(f)(4) as the greater of the amount of money and the fair market value of the other property given or received.  However, in the case of services described in the exemptions in Section 4975(d)(2) (for compensation for certain reasonable services) and (d)(10) (for certain reasonable compensation and expenses) the "amount involved" is only the compensation that is excessive.
[7] Section 4975(f)(2) of the Code.

Delvian Plan Disqualified Persons

**K**AYE SCHOLER LLP

John H. van Merkensteijn, III
Matthew R. Stein
Jerome Lhote                                   - 10 -                                   June __, 2014
Richard Markowitz
Adam LaRosa

other than a fiduciary acting only as such[8].  An additional tax of 100% of the amount involved is

imposed on any such disqualified person if the initial 15% tax is imposed and the transaction is

not corrected within the taxable period.

    Correcting a prohibited transaction means to undo the transaction to the extent possible

and in any case to place the plan in a position not worse than that in which it would have been if

the disqualified person had acted under the highest fiduciary standards[9].

    **C.**   **Discussion of Prohibited Transactions**

    Based on the definition of "disqualified person" and the activities of the respective

entities as described above, we believe that none of the entities with which the Investing Plans or

the Delvian 2013 Partnership has entered into securities lending arrangements or sold cash-

settled stock futures to, or any of the publicly-traded companies from which the dividends are

paid should, as a result of these activities, become a disqualified person with respect to the

Investing Plans.  However, Solo, Mr. LaRosa and the party which files the tax reclaim forms will

be disqualified persons because of their performance of services with respect to the Investing

Plan or the Delvian 2013 Partnership, as described herein.[10]

    As to the question of whether the performance of services for the Investing Plan results in

the service provider being a disqualified person, while there is no direct guidance on this issue, it

is possible to make the argument that a service provider such as Solo does not become a

---

[8] Therefore, it is possible that if a transaction resulted in more than one disqualified person being liable, each would have to pay the 15% excise tax.
[9] Section 4975(f)(5).
[10] We understand that none of these publicly traded companies or the entities with which the securities lending arrangements are entered into have any other relationship to the Investing Plans which would result in them being treated as a disqualified person under Section 4975 of the Code.

Delvian Plan Disqualified Persons